UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

BRIDGETTE CHAPMAN,  :
                                  :
                Plaintiff,  :

                                    :
      -against-  :
                                    :

CITY OF NEW YORK and NEW YORK CITY  :
DEPARTMENT OF EDUCATION,  :
                                  :
                    Defendants.  :
------------------------------------------------------------------x

**MEMORANDUM & ORDER**

06-CV-3153 (ENV)(JMA)

**VITALIANO, D.J.**

       Plaintiff Bridgette Chapman commenced this action against the City of New York and the New York City Department of Education ("DOE"), alleging employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the New York State Executive Law § 296, New York City Administrative Code §§ 8-101 et seq., and 42 U.S.C. §§ 1981, 1983 and 1985. Defendants now move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted.

## I.   BACKGROUND

       The following facts are drawn from the complaint and the submissions of the parties on defendants' motion, including the statements of undisputed material fact filed by all parties pursuant to Local Civil Rule 56.1. The facts are construed, as they must be in the summary judgment context, in the light most favorable to Chapman as the nonmoving party. See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 456 (2d Cir. 2007). Any factual disputes are noted.

       Plaintiff, a former tenured teacher employed by DOE, alleges that from January 2002 to

1

October 2004, she was denied certain positions based on her race (African-American) and in retaliation for having filed charges of race discrimination with the Equal Employment Opportunity Commission ("EEOC") in 2001 and 2002.

## A. Factual Allegations

Plaintiff began her employment with DOE, then the Board of Education, in October 1985 as a teacher of common branches assigned to P.S. 279. (See Ozgu Decl., at ¶ 3.)[1] After working at P.S. 279, P.S. 120, P.S. 196, and P.S. 250, Chapman achieved tenure on September 1, 1996, and was assigned to P.S. 23 in Brooklyn effective September 3, 1996. (Id. at ¶ 4.) Patricia Hagler-Singleton was the principal of P.S. 23, and, like plaintiff, is also African-American. (Id. at ¶ 5.) Chapman alleges that from September 1998 to May 2002, Singleton "subjected her to a hostile work environment predicated upon her race." (See Jackson Decl., at ¶ 5.)[2] Specifically, she claims that Singleton encouraged other employees to belittle and use profane language against her, resulting in physical threats and harassment on a daily basis. (Id.)

In March 2001, disciplinary charges were filed against Chapman for engaging in inappropriate and insubordinate conduct and neglecting her duties. (Ozgu Decl., at ¶ 10.) The charges alleged that, during the 1999-2000 school year, plaintiff failed to follow the school schedule by taking her class out of the classroom at 9:05am, engaged in a private conversation with an unknown individual while her class was standing in the hallway unattended, refused to allow students to go to the bathroom, dressed inappropriately with shorts past her thigh area and t-shirts, filed her fingernails and applied makeup during instructional time, and conducted union business during instructional time. (Id.) Further, in the 2000-2001 academic year, plaintiff

---

[1] References to "Ozgu Decl." denote the declaration of Pinar Ozgu in support of defendants' motion for summary judgment.

[2] References to "Jackson Decl." denote the declaration of Stephen Jackson in support of plaintiff's opposition to defendants' motion for summary judgment.

allegedly took her class to the main lobby and was speaking on her cell phone, refused to return her students to the classroom, said to the principal "ghetto slut bitch, fuck you," in front of her students after being directed to return to the classroom, left school at 9:30am, refused to allow students inside the classroom when they were late, and refused to sign the safety log book after being directed to do so. (Id.) Plaintiff contradicts two of these incidents. First, she contests that on May 31, 2000, as Singleton claims, her class was not in the classroom but instead outside a room on the first floor of the school building, while she was inside the room engaged in a private conversation with an unknown individual. (Ozgu Decl., at ¶ 6.) Chapman allegedly refused to take her students back to the classroom, and was inappropriate and insubordinate. (Id.) Chapman, however, claims that she had merely taken her students to participate in an event in another classroom, and that Singleton chastised her in the presence of her peers and students. (Jackson Decl., at ¶ 6.) Second is an incident on September 29, 2000, when Assistant Principal Victor Rodriguez claims that he observed plaintiff, accompanied by her students, having a conversation with another teacher regarding a union matter. (Ozgu Decl., at ¶ 7.) Rodriguez followed up with a written warning to Chapman that she could not conduct union business during class time. (Id.) Chapman denies that this happened and claims that she conducted union business only during the designated periods. (Jackson Decl., at ¶ 7.)

After the disciplinary charges were filed, an independent hearing was conducted. (Ozgu Decl., at ¶ 11.) The hearing lasted 31 days and 115 exhibits were submitted by the parties. (Id. at ¶ 11-12.) Eventually, DOE voluntarily withdrew some of the charges and, ultimately, Chapman was found guilty of only one of the charges—she was issued a letter of reprimand for using the word "slut" in response to Singleton when she was asked to return to the classroom. (Id. at ¶ 13.) Prior to the conclusion of this disciplinary hearing process, plaintiff was reassigned.

3

(Id. at ¶ 14.)

In 2002, DOE again filed disciplinary charges against Chapman for insubordination, this time also seeking termination of her employment. (Id. at ¶ 18.) The charges alleged that plaintiff failed to report to P.S. 157 after being told that she was being reassigned to that school for safety reasons, refused to leave the Community School District 14 office on May 14, 2002 and had to be escorted out by school security officers and police, engaged in conduct unbecoming of her position,[3] and violated certain conflict of interest laws of the City of New York related to her position at Revelation Performing Arts Studio. (Id.) Chapman denies that she refused to leave the district office premises on May 14, 2002, and contends instead that she left of her own volition after retrieving her personal belongings. (Jackson Decl., at ¶ 16.) She also denies making any inappropriate remarks to school officials. (Id. at ¶ 17.) At the conclusion of the second process, the independent hearing officer found plaintiff guilty of the first two charges—that Chapman failed to report to P.S. 157 as instructed and was insubordinate, requiring her to be escorted off the district office premises. (Ozgo Decl., at ¶ 19.) She was ordered to pay a fine of a full week's salary. (Id.) Parenthetically, during the pendency of the 2001 and 2002 disciplinary charges, though suspended, Chapman received full salary and benefits. She remained suspended until September 7, 2004, when she was assigned to P.S. 256, Brooklyn. (Id. at 20.)

While assigned to P.S. 256, Chapman claims that she was subjected to "specious, retaliatory and discriminatory allegations of classroom ill preparedness . . . ." (Jackson Decl., at ¶ 23.) She stopped reporting to school and sought a sabbatical leave of absence due to post

_____

[3] Specifically, on May 14, 2002, Chapman allegedly told supervisors and union representatives that "illness should fall on [them] and [their] families" and that "Jesus [would] punish them." (Ozgu Decl., at ¶ 18.)

traumatic stress disorder. (Ozgu Decl., at 24.) Plaintiff was granted a sabbatical leave from October 20, 2004 to September 5, 2005.[4] (Id.) While on sabbatical, Chapman applied for a 6-month extension of her leave, which was denied. (Id. at 26-29.) At the end of her sabbatical, plaintiff failed to return to her position at P.S. 256. (Id. at 30.) On May 9, 2006, Interim Acting Principal of P.S. 256, Sharyn Hemphill, sent Chapman a letter directing her to contact the school as soon as possible to inform them of her intentions regarding the upcoming school year. (Id.) Another letter was mailed to Chapman on February 12, 2007 informing her that if DOE did not receive a response by February 16, 2007, they would consider her position abandoned. (Id. at 31.) Since plaintiff failed to return to duty or contact DOE, she was deemed to have abandoned her position and was administratively terminated on February 23, 2007, effective August 31, 2006. (Id. at 32.) Plaintiff claims that she contacted defendants and submitted medical documentation justifying her demand to remain on medical leave. (Jackson Decl., at ¶ 30-33.)

## B. Procedural Allegations

In her complaint here, Chapman alleges that she filed two charges of discrimination with the EEOC in January 2001 and July 2002, alleging that defendants discriminated against her on the basis of race. (Compl., at ¶ 10.) In her opposition to the instant motion, plaintiff also alleges that she filed a charge of discrimination with the New York City Commission on Human Rights ("CCHR") in November 2002. (Jackson Decl., at 37.) However, a search of DOE records indicates that no charges were filed by plaintiff in 2001 or 2002. (Ozgu Decl., at 37.) A further search of all DOE Office of Legal Services databases showed no complaints by Chapman except a complaint filed simultaneously on March 16, 2005, with the State Division of Human Rights ("SDHR") and the EEOC. (Id.) On February 6, 2006, SDHR dismissed Chapman's charge and

---

[4] Chapman, however, claims that defendants "unwarrantedly and discriminatorily ignored [her] medical reports and denied [the] sabbatical." (Jackson Decl., at ¶ 24.) There is no support for this allegation in the record. In fact, there is strong support for just the opposite contention.

on March 23, 2006, the EEOC issued a right to sue letter. (Id. at 25 n.3.)

This lawsuit followed on June 26, 2006. Chapman's complaint states conclusory allegations that "defendants discriminated against her in the terms and conditions of her employment on the basis of race," (compl. ¶ 10), and that "after [filing charges of discrimination with the EEOC in January 2001 and July 2002] defendants retaliated against [her]," (id. ¶¶ 10-11). She recites a litany of specific additional allegations in opposition to the instant motion.

To summarize her claims, Chapman alleges that unfounded disciplinary charges were brought against her in 2001 and 2002; that between January 2002 and October 2004 she was denied promotions to several positions, including administrative principal and assistant principal positions; that between March 2001 and October 2004 she was denied admission to certain internship programs, including a District 14 Internship Program for Principal, a GED program at the New Beginnings Charter School, a SDA/SAS Internship GED program, and various other SAS/SDA internship programs; and that she was mistreated by unidentified individuals when she was assigned to the reassignment center from March 2001 to June 2004. Ultimately, Chapman was also terminated in February 2007 effective August 2006. She alleges that this conduct violated Title VII, §§ 1981, 1983, and 1985, as well as New York law.

## II.  DISCUSSION

### A.  Summary Judgment Standard

A district court must grant summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The Court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but rather to "determine whether there are issues of fact to be tried." Sutera v. Schering

Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)). The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, see Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005), and the Court will resolve all ambiguities and draw all permissible factual inferences in favor of the party opposing the motion, see Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004); Gummo v. Vill. of Depew, 75 F.3d 98, 107 (2d Cir. 1996) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party. See George v. Reisdorf Bros., Inc., 10-CV-0798, 10-CV-1208, 2011 U.S. App. LEXIS 2296, at *3 (2d Cir. Feb 3, 2011). The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Instead, the nonmoving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . . [s]ince a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986) (internal citations omitted).

The Second Circuit has cautioned that courts should be "especially chary in handing out summary judgment" in employment discrimination cases, where intent of the employer is usually

a central factual issue. <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 71 (2d Cir. 2000) (<u>quoting</u> <u>Chertkova v. Conn. Gen. Life Ins. Co.</u>, 92 F.3d 81, 87 (2d Cir. 1996); <u>see</u> <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997). "Moreover, as discrimination will seldom manifest itself overtly, courts must be alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law." <u>Bickerstaff v. Vassar Coll.</u>, 196 F.3d 435, 448 (2d Cir. 1999) (internal quotation marks omitted). Notwithstanding, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." <u>Abdu-Brisson v. Delta Air Lines</u>, 239 F.3d 456, 466 (2d Cir. 2001). However, "a plaintiff must provide more than conclusory allegations of discrimination to defeat" a summary judgment motion. <u>Schwapp</u>, 118 F. 3d at 110; <u>see</u> <u>Chambers v. TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 40 (2d Cir. 1994).

## B. Claims against the City

As a preliminary matter, defendants assert that all plaintiff's claims against the City of New York must be dismissed because DOE is an entity separate from the City. After the 2002 amendments to the New York Education law, there was some uncertainty regarding the relationship between the City and the former Board of Education. Some New York lower courts declined to dismiss claims against the City noting that, "in light of the wholesale transfer of power and responsibility from the Board of Education to the Mayor, the City may not [] shield itself from liability by claiming that the Board of Education is the responsible party." <u>Perez v. City of New York</u>, 9 Misc. 3d 934, 936-37, 804 N.Y.S.2d 632, 633 (N.Y. Sup. Ct., Bronx Co. 2005); <u>see also</u> <u>P.I. ex rel. R.I., Sr.</u>, 10 Misc. 3d 1073(A), 814 N.Y.S.2d 891 (N.Y. Sup. Ct., New York Co., 2006). However, the Appellate Division, First Department recently clarified that

> [w]hile the 2002 amendments to the Education Law providing for
> greater mayoral control significantly limited the power of the

8

> Board of Education, the City and the Board remain separate legal entities. The legislative changes do not abrogate the statutory scheme for bringing lawsuits arising out of torts allegedly committed by the Board and its employees, and the City cannot be held liable for those alleged torts. It is a cardinal principle of statutory interpretation that the intention to change a long-established rule or principle is not to be imputed to the legislature in the absence of a clear manifestation.

Perez v. City of New York, 41 A.D.3d 378, 379, 837 N.Y.S.2d 571 (1st Dep't 2007) (internal citations omitted). Following this decision, several New York courts have dismissed claims against the City, even in light of the 2002 amendments. See e.g., Miner v. City of New York, 78 A,D.3d 669, 911 N.Y.S.2d 109, (2d Dep't 2010); Flores v. City of New York, 62 A.D.3d 506, 878 N.Y.S.2d 728 (1st Dep't 2009); Corzino v. City of New York, 56 A.D.3d 370, 868 N.Y.S.2d 37 (1st Dep't 2008); see also Moore v. City of New York, No. 08 Civ. 8879, 2010 U.S. Dist. LEXIS 19183, at *15-*16 (S.D.N.Y. Mar. 2, 2010) ("Case law makes clear that the City cannot be liable for the acts of the DOE or its employees."); Fierro v. City of New York, 591 F. Supp. 2d 431, 446 (S.D.N.Y. 2008) ("Courts in this circuit as well as the New York State courts have made clear that the City of New York and the DOE are separate legal entities. . . . Because plaintiff alleges acts committed by the DOE and its employees, the City of New York is not a proper party.").

More to the point, there is no dispute that Chapman was an employee of DOE and its predecessor New York City Board of Education; she does not claim that she was ever directly employed by the City or that the City took any action that affected the terms of her employment. In light of relevant case law, the City cannot be liable for the acts of DOE or its employees. Accordingly, plaintiff's claims against the City must be dismissed.

9

## C. **Title VII Claim against the Department of Education**

### 1. Exhaustion of Administrative Remedies

Both sides agree that a charge of race discrimination and retaliation was filed with SDHR on March 16, 2005 and that EEOC issued a right to sue letter related to the same charge on March 23, 2006. Defendants argue that any Title VII claims that accrued beyond 300 days prior to the filing of this charge are time barred. To be sure, under Title VII, a plaintiff may only assert claims involving acts alleged to have occurred within 300 days of filing a discrimination complaint with an appropriate anti-discrimination agency. See 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061 (2002). However, the record shows that the March 2005 charge may not have been the only administrative complaint filed. Chapman alleges that she filed charges of discrimination with EEOC in January 2001 and July 2002. (Compl. ¶ 10.) She now also claims that a complaint was filed with CCHR in November 2002. (Jackson Decl., at 37-38.) Defendants reply that a search of CCHR's database shows that no such complaint from Chapman is actually recorded. But, while there is no substantiation of the other claimed filings, plaintiff has submitted a certified mail receipt as well as a return receipt showing that the November 2002 package was signed for by Dorene Moore at New York City Commission on Human Rights, 40 Rector Street, New York, NY 10006. (Jackson Decl., Exhibit B.) On a summary judgment motion, if "there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo, 75 F.3d at 107. Therefore, in light of plaintiff's evidence that a document from her was at least received by CCHR, the Court cannot dismiss Chapman's Title VII claims that accrued before May 20, 2004 as a matter of law for failure to exhaust administrative remedies. It will instead evaluate these claims on the merits.

## 2. Discrimination Claims

In <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817 (1973) and <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S. Ct. 1089 (1981), the Supreme Court established the burden-shifting analysis that courts are required to apply when analyzing Title VII discrimination claims. To establish a <u>prima facie</u> case of employment discrimination, a plaintiff must demonstrate that (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for her position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>see also</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000); <u>James v. New York Racing Ass'n</u>, 233 F.3d 149, 153-54 (2d Cir. 2000).

Chapman, as an African-American, clearly satisfies the first prong of this analysis. Given the insight they provide, the Court will next consider the claimed adverse consequences.

### a. Disciplinary Charges

Disciplinary charges were brought against Chapman in 2001 and 2002 for engaging in inappropriate and insubordinate conduct and neglecting her duties. It is well-settled that disciplinary charges are considered adverse employment actions satisfying the third prong of <u>McDonnell Douglas</u>, so the only remaining question is whether the charges occurred under circumstances giving rise to an inference of discrimination. <u>See, e.g.</u>, <u>Rolon v. Ward</u>, 345 Fed. Appx. 608, 610 (2d Cir. 2009) ("Being forced to defend against disciplinary charges may constitute an adverse employment action.").

For the circumstances giving rise to an inference of discrimination required by the fourth prong, Chapman relies on racism, but her allegations of racism are highly conclusory and

completely unsupported by record evidence. She merely asserts that these "specious allegations of abuse" occurred because she was black. In counterpoint, DOE's reasons for bringing disciplinary charges are well-documented. Boiled to the essence, there is simply nothing in the record to support Chapman's contention that these charges were brought under any circumstances giving rise to an inference of race-based discrimination. Certainly, the bald assertion of racial discrimination standing alone is insufficient to create a genuine issue of material fact for trial that these disciplinary charges were tinged in any way by racial considerations. See, e.g., Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980) (noting that "[t]he litigant opposing summary judgment . . . 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial. Rather, [she] must bring to the district court's attention some affirmative indication that [her] version of relevant events is not fanciful.") (internal citations omitted); Alfieri v. SYSCO Food Servs., 192 F. Supp. 2d 14, 20 (W.D.N.Y. 2001) (observing that it is well-settled that "[f]or a plaintiff in a discrimination case to survive a motion for summary judgment, he or she must do more than present conclusory allegations of discrimination . . . he or she must offer concrete particulars to substantiate the claim") (internal citations omitted). Summary judgment is therefore warranted on this claim.

*b. Admission to Internship Programs*

Chapman also complains that she was discriminatorily foreclosed from the opportunity to participate in various unpaid internships, which she claims would have been beneficial to her overall career advancement. Specifically, she alleges that, between March 2001 and October 2004, she submitted applications for the following programs: District 14 Administrative Program Internship for Principal, a GED program at New Beginnings Charter School, an SDA/SAS Internship GED Program in Long Island City, and an SAS/SDA Internship in Queens. Plaintiff

alleges that she was either denied admission to these intern programs or her admission was rescinded after the program administrators discovered the "problems" she was having with her district.

First off, Chapman has produced nothing but naked allegations regarding her applications to and denials by the internship programs she identified in her opposition papers. She has produced no evidence that she in fact applied to these programs, or was qualified for the positions, or any evidence that decisions were made denying her admission. The crux of her complaint seems to be that DOE officials notified whomever the program administrators were of Chapman's disciplinary problems, which then led to her exclusion from the programs. But, as noted above, under the fourth prong of McDonnell Douglas, Chapman must make some showing of discriminatory animus. This claim is one generation removed from the claims lobbed at DOE employees who worked directly with plaintiff. If possible, the claims regarding the denial of internship positions are balder and more conclusory. Chapman neither alleges that the unidentified DOE officials who provided information to the internship programs provided false information, nor does she allege that they provided information in a manner that could give rise to an inference of race-based discrimination, nor that the administrators who ultimately decided to reject her applications did so under circumstances which would give rise to such an inference. There is nothing, simply put, before the Court that suggests that there is a material factual dispute about Chapman's failure to satisfy the fourth McDonnell Douglas prong. As such, this claim fails as a matter of law.

### c. Mistreatment

Chapman next makes various allegations that she was mistreated while assigned to

administrative duties between March 2001 and June 2004.[5] For example, at her deposition she testified that she was subjected to excessive work demands, that she had to clean certain rooms at the reassignment center, that she was forced to leave the teacher's lounge for meetings and had to carry a table and computer to another room to work, that the Superintendent ordered others not to help her, that she was forced to sit in a dirty room filled with boxes which could fall over at any time, and that certain injury reports were denied. Chapman makes no allegation, however, that she was treated disparately from any other suspended teacher detailed to the reassignment center.

Yet, when the fog lifts, Chapman is adrift on a racial-animus-free sea. This claim suffers from the same infirmity as the claims already considered—the assertion of race-based transgressions but no factual basis for them. Assuming these slings and arrows of reassignment center life satisfy the adverse consequences third prong of <u>McDonnell Douglas</u>, there is no record evidence to support even the slightest inference of racial animus. With no material facts about that in dispute, DOE is entitled to summary judgment on this claim as well.

### d. Promotions

Next, Chapman alleges that between January 2002 and October 2004 she was denied promotion to several positions, including administrative principal and assistant principal. At her deposition, Chapman testified that unidentified white teachers who were less qualified than she

---

[5] For the first time in her opposition to the instant motion, Chapman refers to this identical conduct as giving rise to a hostile work environment claim. As this claim was not raised in Chapman's complaint, it will not be considered by the Court. <u>Lyman v. CSX Transp., Inc.</u>, 364 Fed. Appx. 699, 701 (2d Cir. 2010) (citing <u>Greenidge v. Allstate Ins. Co.</u>, 446 F.3d 356, 361 (2d Cir. 2006) (declining to reach merits of argument raised for first time in opposition to summary judgment); <u>Syracuse Broad. Corp. v. Newhouse</u>, 236 F.2d 522, 525 (2d Cir. 1956) (holding that district court was "justified" in "brush[ing] aside" further argument not alleged in complaint but raised for first time in opposition to summary judgment); 5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1183, at 23 n.9 (3d ed. 2004) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims.")).

were allowed to make advancement in their careers at her expense. Specifically, she testified that when she was 28 or 30 years old, DOE hired an unidentified white individual who was 21 years old as principal because her "black face wasn't good enough for them." (Exhibit C, at 174:8-21.) Chapman claims that it was the "culture" of DOE to hire whites and Hispanics who were less qualified and Singleton was one of the few black principals hired by DOE. (Id. at 175:25-176:9.)

Claims for failure to promote are analyzed under a modified McDonnell Douglas framework. For Chapman's claim to survive, she must demonstrate that (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications. Petrosino v. Bell Atlantic, 385 F.3d 210, 226 (2d Cir. 2004) (internal citations omitted); see also Butts v. N. Y. City Dep't of Hous. Pres. & Dev., No. 00-CV-6307, 2007 U.S. Dist. LEXIS 6534, at *36 (S.D.N.Y. Jan. 29, 2007). While it is undisputed that Chapman, as an African-American and a female, is a member of protected classes, plaintiff is unable to establish even a prima facie case as to the remaining three elements. It is well-settled that in order to meet the application requirement contained within the second prong of this test, a plaintiff must submit a "specific application" for a given position. Petrosino, 385 F.3d at 227; see also Butts, 2007 U.S. Dist. LEXIS 6534, at *37 (noting that the "application requirement is not satisfied by a general request to be considered for [a] position"). Firing the blunderbuss of racism at her deposition, neither in her testimony there nor through any other evidence, however, does Chapman demonstrate that she applied at any specific time for any specific position, let alone one for which her application was rejected. Additionally, plaintiff has not even pleaded allegations that give rise to an

inference that she was qualified (other than she was a tenured teacher) for either type of position she targets now. Accordingly, summary judgment is warranted on this claim too.

    *e. Termination*

Plaintiff was terminated in February 2007, effective August 2006. While the complaint does not specifically allege that her termination was discriminatory, the Court will construe it as such in light of her other allegations. The claim is nonetheless without merit. In order to establish a <u>prima facie</u> case of discriminatory discharge under the relevant variation of the <u>McDonnell Douglas</u> analysis, a plaintiff must show: (1) that she belongs to a protected class; (2) that she was competent to perform the job or that she was performing her duties satisfactorily; (3) that she was discharged; and (4) that her discharge occurred under circumstances giving rise to an inference of discrimination. <u>Mario v. P & C Food Mkts., Inc.</u>, 313 F.3d 758, 767 (2d Cir. 2002); <u>Olle v. Columbia Univ.</u>, 332 F. Supp. 2d 599, 615 (S.D.N.Y. 2004). Once again, defendants do not dispute that Chapman is a member of protected classes and that she was discharged, thus satisfying the first and third prongs of her <u>prima facie</u> case. DOE, however, does dispute that Chapman has established the second and fourth prongs.

Regarding the second prong, plaintiff's burden at the <u>prima facie</u> stage is "minimal," <u>Hollander v. American Cyanamid Co.</u>, 172 F.3d 192, 199 (2d Cir. 1999). The Second Circuit has observed that, in a termination case, "by hiring the employee, the employer itself has already expressed a belief that she is minimally qualified. Moreover, when . . . the employer has retained the plaintiff for a significant period of time and promoted her, the strength of the inference that she possesses the basic skills required for her job is heightened." <u>Gregory v. Daly</u>, 243 F.3d 687, 696 (2d Cir. 2001); <u>see also</u> <u>Augustin v. Yale Club</u>, 03-CV-1924, 2006 U.S. Dist. LEXIS 67462, at *73 (S.D.N.Y. Sept. 15, 2006) (finding that "[d]ue to the fact that [d]efendant hired, promoted,

and retained [p]laintiff for a significant period of time, [p]laintiff has sufficiently pled the second prong of her prima facie . . . claim, that she was qualified for the position"). Here, because DOE, in its predecessor corporate form as the Board of Education, hired Chapman in 1985 and granted her tenure in 1996, the Court finds that plaintiff was, at a minimum, qualified for her position, satisfying the second prong of her prima facie case.

Unfortunately for plaintiff, she has produced nothing but bare allegations to support the fourth prong. Chapman simply cannot establish that her termination occurred under circumstances giving rise to an inference of discrimination. The record is abundantly clear that Chapman was terminated upon failing to return to work after her one-year sabbatical, consistent with the collective bargaining agreement governing the terms of her employment. It is unchallenged that DOE did not act preemptively; Chapman was mailed repeated warnings that she had to return to work as scheduled. Chapman meets these facts with the stony silence of a void of evidence to suggest a discriminatory animus on the part of DOE.

But even if plaintiff could establish a prima facie case, the inquiry would not end there. The Court would presume then that the employer unlawfully discriminated against plaintiff, but that would merely shift the burden of production to DOE to offer a legitimate, nondiscriminatory rationale for its actions. McDonnell Douglas, 411 U.S. at 802-03; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07, 113 S. Ct. 2742, 2747 (1993). If a defendant is able to put forth evidence of a nondiscriminatory basis for the action, the presumption of discrimination "drops out of the picture." St. Mary's, 509 U.S. at 510-11. The burden then shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253; Fisher v. Vassar College, 114 F.3d 1332, 1337 (2d Cir. 1997). Here, DOE's stated reason

for termination stands unopposed. Chapman's failure to return to duty after her leave expired provided DOE with a legitimate, nondiscriminatory reason for its action. Plaintiff, in turn, has not demonstrated that DOE's reason "was false" or that "discrimination was the real reason" for the decision to terminate her employment. St. Mary's, 509 U.S. at 515. In sum, Chapman has not "establish[ed] a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether [DOE's] reason for [termination was] false and as to whether it [was] more likely that a discriminatory reason motivated [DOE] to [terminate her]." Morris, 2003 U.S. Dist. LEXIS 5146, at *2 (emphasis omitted) (citing Taggart v. Time Inc., 924 F.2d 43, 46 (2d Cir. 1991)). This claim too, as a result, does not survive summary judgment.

  3. Retaliation Claims

  Chapman alleges that DOE's conduct was also retaliatory, in violation of Title VII. Courts evaluate Title VII retaliation claims using the same McDonnell Douglas three-step burden-shifting analysis used to evaluate plaintiff's race discrimination claims. See generally McDonnell Douglas, 411 U.S. at 802. For retaliation cases, a plaintiff must first establish a prima facie case showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001); see Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996). In determining whether this initial burden has been satisfied, a district court's role is to find only whether a plaintiff's proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive. See Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987). "If a plaintiff sustains the initial burden, a presumption of retaliation arises. Then, under the second step of the burden-shifting

18

analysis, the onus falls on the employer to articulate a legitimate, nonretaliatory reason for the adverse employment action. Finally, as for the third step, once an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (internal quotation marks and citations omitted).

Plaintiff alleges in her complaint that she filed two charges of discrimination with EEOC in January 2001 and July 2002, and that "[s]hortly after [she] filed [the charges] against defendants, [they] retaliated against [her]." (Compl. ¶ 10-11.) Chapman also claims that she submitted a complaint to CCHR in November 2002. As noted in Part II.C, defendants contend that no complaints of discrimination were filed by plaintiff in any forum other than the charge filed with SDHR in March 2005. All fuss aside about whether and where a complaint was filed in 2002, the retaliation claim advanced in this lawsuit still fails. Even assuming arguendo that a complaint was filed with an administrative agency some time in 2002 and DOE had notice of it (thus satisfying the first and second prongs), plaintiff cannot establish a prima facie case under McDonnell Douglas.

But, failure is not at the third prong, that is, the required demonstration of adverse consequences. A "plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Galabya, 202 F.3d at 640 (internal citations omitted). The retaliatory conduct averred by Chapman is substantially the same conduct complained of in her claim for race discrimination. There can be little doubt that the disciplinary charges filed against plaintiff, the suspension of her teaching duties and exile to the reassignment center, and her termination, are adverse employment actions and clearly meet

the third prong.[6]

Moving to the fourth prong, Chapman must show that there was a causal connection between these adverse employment actions and the filing of her complaints. Proof of causation in retaliation cases can be shown either: (1) directly, through evidence of retaliatory animus aimed against a plaintiff by the defendant; or (2) indirectly, by showing that the protected activity was followed closely by discriminatory treatment or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct. See Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990); Moore v. Consol. Edison Co. of N.Y., Inc., 00 Civ. 7384, 2007 U.S. Dist. LEXIS 19118, at *22 (S.D.N.Y. Mar. 20, 2007).

  *a. Termination*

Regarding her termination, plaintiff has not alleged, much less offered, proof that any similarly situated employees were treated differently. As such, and absent direct evidence, the only possible indirect proof of retaliatory conduct is that her termination was close in time to her March 2005 complaint. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very

---

[6] In her opposition to the instant motion, plaintiff alleges for the first time two additional incidents of retaliation by DOE: a reprimand letter sent to her in September 2004 and denial of her medical sabbatical. Even if they are properly before the Court now, they are unsubstantiated additions. A letter of reprimand on its own can constitute an adverse employment action, but "courts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation." Honey v. County of Rockland, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) (collecting cases). With regards to Chapman's allegations relating to denial of her medical leave, the record reflects that a leave of absence was in fact granted from October 20, 2004 to June 30, 2005. She was merely denied an extension of her leave, which standing alone does not rise to the level of an adverse employment action. See, e.g., Figueroa v. N.Y. Health and Hosps. Corp., 500 F. Supp. 2d 224, 229-31 (S.D.N.Y. 2007) (holding that denial of medical leave and denial of plaintiff's choice of vacation time did not constitute an adverse employment action).

close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001)

(quoting O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)). Pointedly,

"[i]n general, when more than three months have passed between a protected activity and an

allegedly retaliatory response, the Second Circuit has deemed the evidence insufficient to raise

an issue of fact concerning causation." Jimenez v. City of New York, 605 F. Supp. 2d 485, 528

(S.D.N.Y 2009); see also Breeden, 532 U.S. at 273-74 ("[t]he cases that accept mere temporal

proximity between an employer's knowledge of the protected activity and an adverse

employment action as sufficient evidence of causality to establish a prima facie case uniformly

hold that the temporal proximity must be 'very close'") (citing Richmond v. ONEOK, Inc., 120

F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); Hughes v. Derwinski, 967 F.2d

1168, 1174-1175 (7th Cir. 1992) (4-month period insufficient))). Chapman filed her SDHR

complaint on March 16, 2005, approximately 18 months before her termination on February 23,

2007. She also allegedly filed her EEOC charge sometime in 2002, years before her termination

date. This falls well short of meeting the temporal proximity requirement and plaintiff has

submitted no further evidence to establish a causal connection. Hence, there is no material fact

in dispute—her termination was not retaliatory.

      *b. Disciplinary Charges and Suspension of Teaching Duties*

      As for the 2001 and 2002 disciplinary charges and suspension of teaching duties,

Chapman also cannot make out the fourth prong. First, the disciplinary charges brought in 2001

and the suspension and reassignment in 2001 obviously occurred prior to any complaints

Chapman claims that she filed. Second, while the 2002 charges were brought after the

November 2002 CCHR complaint, temporal proximity is irrelevant. The 2002 disciplinary

charges arose primarily from an incident which occurred on May 14, 2002, which, of course,

predated the November 2002 CCHR complaint. "Where timing is the only basis for a claim of

retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001). Moreover, the disciplinary charges filed against Chapman in 2001 demonstrate a pattern of disciplinary action, which undermines any inference of retaliation. Where an employer is considering the adverse employment action in question before the protected activity occurred, "their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." Breeden, 532 U.S. at 272.

Stated succinctly, absolutely no direct evidence or indirect evidence is proffered by plaintiff from which an inference of retaliatory intent can be drawn. Consequently, plaintiff's retaliation claim fails.

## D. §§ 1981, 1983 and 1985 Causes of Action

Chapman also brings claims under §§ 1981, 1983, and 1985 for the same conduct upon which she founds her Title VII complaints. And, just as similarly, Chapman has no cognizable claims under §§ 1981, 1983, and 1985.[7]

Discrimination claims under §§ 1981 and 1983 are analyzed in the same manner as claims arising under Title VII. See Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998); Choudhury v. Polytechnic Inst. of New York, 735 F.2d 38, 44 (2d Cir. 1984). Therefore, since all plaintiff's Title VII race discrimination claims have been found meritless, her §§ 1981 and 1983 claims must also fail. They are dismissed.

Chapman also cannot establish a valid claim under § 1985. Section 1985(3) creates a cause of action where "two or more persons in any State or Territory conspire...for the purpose

---

[7] It is, consequently, unnecessary for the Court to consider any of the asserted statute of limitations defenses asserted by defendants.

of depriving…any person…of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To allege a violation, plaintiff must claim: (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) a person is either injured in his person or property or deprived of any right or privilege of a United States citizen as a result. United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356 (1983). Moreover, a § 1985(3) violation "must be motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Id. (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798 (1971)). Chapman has not come close to meeting this burden. In fact, her complaint is devoid of any allegations that a conspiracy existed, or proof that there was a conspiracy and that it was motivated by racial animus. The § 1985 claim is dismissed.

## E. Non-Federal Claims

The foregoing is prologue to Chapman's state law claims. The same claims of racial discrimination asserted are grounded in New York State Executive Law §§ 296 and the New York City Administrative Code. New York State Executive Law § 296(1)(a) provides that it "shall be an unlawful discriminatory practice [f]or an employer . . . , because of an individual's age, race, . . . color, national origin, . . . sex, [or] disability . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." Since § 296 "uses virtually identical language" to § 8-107 of the New York City Administrative Code, claims under both provisions are "subject to the same

analysis."[8] <u>Dunson v. Tri-Maintenance & Contractors., Inc.</u>, 171 F. Supp. 2d 103, 113-14

(E.D.N.Y. 2001); <u>see</u> <u>Schanfield v. Sojitz Corp. of Am.</u>, 663 F. Supp. 2d 305, 344 (S.D.N.Y.

2009). Notwithstanding any other defense, defendants argue that these claims must be dismissed

because Chapman failed to comply with the notice of claim provision. "State notice of claim

requirements . . . are substantive law that must be applied by federal courts in deciding pendent

state and local law claims." <u>Moore</u>, 2010 U.S. Dist. LEXIS 19183, at *26 (citing <u>Felder v.</u>

<u>Casey</u>, 487 U.S. 131, 151, 108 S. Ct. 2302 (1988); <u>Promisel v. First American Artificial Flowers</u>,

943 F.2d 251, 257 (2d Cir. 1991)). "'If a state would not recognize a plaintiff's right to bring a

state claim in state court, a federal court exercising pendent jurisdiction, standing in the shoes of

a state court, must follow the state's jurisdictional determination and not allow that claim to be

appended to a federal law claim in federal court.'" <u>Id.</u> (citing <u>Promisel</u>, 943 F.2d at 257).

    Under New York jurisdictional law, a plaintiff must both plead and prove compliance

with the notice of claim requirement under Education Law § 3813 in any action against DOE.

<u>See</u> <u>Stoetzel v. Wappingers Cent. Sch. Dist.</u>, 166 A.D.2d 643, 643-44, 561 N.Y.S.2d 71, 72 (2d

Dep't 1990). Education Law § 3813(1) states that:

> No action or special proceeding, for any cause whatever . . . or
> claim against the district or any such school, or involving the rights
> or interests of any district or any such school shall be prosecuted or
> maintained against any school district, board of education . . .
> unless it shall appear by and as an allegation in the complaint or
> necessary moving papers that a written verified claim upon which
> such action or special proceeding is founded was presented to the
> governing body of said district or school within three months after
> the accrual of such claim.

"The purpose of this provision is to accord a school district the opportunity to promptly

investigate claims which, if established, will obligate it to indemnify an employee." <u>Radvany v.</u>

---

[8] The complaint simply states that defendants violated the Administrative Code of the City of New York, without specifying a provision. The Court assumes that plaintiff intended to refer to § 8-107, which prohibits employment discrimination.

Jones, 184 A.D.2d 349, 350, 585 N.Y.S.2d 343, 344 (1st Dep't 1992). Chapman neither pleaded compliance with the notice of claim requirement in her complaint, nor did she submit any proof that the notice of claim was ever filed. Closing the evidentiary loop, defendants have submitted file search evidence that Chapman never filed a notice of claim with either defendant. (See Declaration of Johnny Velez.) With the failure to file the required notice of claim standing unchallenged, plaintiff's state law claims are dismissed.

## III.  CONCLUSION

For all the reasons set forth above, defendants' motion for summary judgment is granted in its entirety.

The Clerk of the Court is directed to enter judgment for defendants and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
March 25, 2011

s/ENV

_____
ERIC N. VITALIANO
United States District Judge